UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| AMANDA P. CARTWRIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:18-CV-244-HBG |
| | ) | |
| ANDREW M. SAUL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal

Rules of Civil Procedure, and the consent of the parties [Doc. 18].

Now before the Court is Plaintiff's Motion for Summary Judgment and Memorandum in

Support [Docs. 15 & 16] and Defendant's Motion for Summary Judgment and Memorandum in

Support [Docs. 20 & 21]. Amanda P. Cartwright ("Plaintiff") seeks judicial review of the decision

of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Andrew M. Saul

("the Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion and

**GRANT** the Commissioner's motion.

## I. PROCEDURAL HISTORY

On November 30, 2015, Plaintiff protectively filed an application for disability insurance

benefits and supplemental security income benefits pursuant to Titles II and XVI of the Social

Security Act, 42 U.S.C. §§ 401 *et seq*. and 1381 *et seq*., claiming a period of disability that began

---

[1] Andrew M. Saul was sworn in as the Commissioner of Social Security on June 17, 2019, during the pendency of this case. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the Defendant in this case.

on October 1, 2015. [Tr. 15, 128–29, 270–78]. After her application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 198–99]. A hearing was held on August 25, 2017. [Tr. 33–82]. On December 4, 2017, the ALJ found that Plaintiff was not disabled. [Tr. 15–26]. The Appeals Council denied Plaintiff's request for review on April 17, 2018 [Tr. 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on June 21, 2018, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.    ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2017.

2. The claimant has not engaged in substantial gainful activity since October 1, 2015, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease, hypertension, generalized anxiety disorder, dysthymic disorder, social anxiety disorder, expressive language (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can stand and walk four hours; sit for six hours; occasionally climb ramps and stairs; never climb ladders,

ropes, or scaffolds; and occasionally stoop, kneel, crouch and crawl. The individual must avoid concentrated exposure to hazards. The individual would be limited to performing routine tasks involving no more than simple short instructions and simple work[-]related decisions with few work places change[s] and only occasional interaction with coworkers and the public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on July 21, 1980 and was 35 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2015, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 18–25].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*,

581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV.    DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience, engage

in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4) and -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137,

146 (1987)).

## V.    ANALYSIS

Plaintiff asserts that the ALJ's disability decision is not supported by substantial evidence in several regards. First, Plaintiff maintains that the ALJ erred at step two by not finding her language impairments to be severe impairments. [Doc. 16 at 13–17]. Next, Plaintiff alleges that the ALJ's RFC determination is not supported by substantial evidence because despite affording great weight to the opinion of consultative examiner, Stephen Hamby, Ph.D., the ALJ failed to account for all of the opined limitations without explanation. [*Id.* at 17–20]. Similarly, Plaintiff claims that the ALJ improperly mischaracterized the substance of the opinion of Kristina Fredericksen, M.S., L.A.P.C., C.R.C., and Kimberly Bigelman, M.S., C.R.C., who prepared a comprehensive vocational evaluation, and that the ALJ failed to account for all of their identified impairments after affording the opinion great weight. [*Id.* at 20–23]. Lastly, Plaintiff contends that the ALJ improperly relied upon the opinion of non-examining state agency consultant, Barbara Green-Muldrow, M.D., who based her opinion on inaccurate facts and the ALJ again failed to explain why she failed to incorporate all of the opined limitations. [*Id.* at 23–25]. The Court will address Plaintiff's specific allegations of error in turn.

### A.    Severe Impairments

Plaintiff contends that the ALJ improperly found that her "receptive language disorder, phonological disorder, and reading disorder" were not severe impairments. [*Id.* at 13]. First, Plaintiff states that she listed these disorders on her applications [Tr. 83, 106], noted in her function report that noise and conversation that is not one-on-one impedes her cognition [Tr. 371] and that she finds it easier to follow written instructions than verbal instructions [Tr. 376], as well as that she testified that noise interferes with her ability to understand spoken language [Tr. 68].

Plaintiff also points to her treatment with a speech pathologist, and a reading and partial language analysis conducted on November 20, 2013 with Valerie Rapowitz, M.S., C.C.C., which found that Plaintiff's reading comprehension scores were poor and that Plaintiff exhibited below average phonological processing skills. [Tr. 452]. During her evaluation with Dr. Hamby, he noted that Plaintiff's speech was choppy and halting, and that she struggled to hear due to sounds from the office next door. [Tr. 490]. Plaintiff cites to her August 5 and 12, 2016 evaluation with Ms. Rapowitz, who found that Plaintiff exhibited moderate to severe receptive and expressive languages disorder, demonstrated difficulty with how she could hear and manipulate sounds, and was noted to have difficulty remembering and comprehending information that she read herself and out loud. [Tr. 559]. Therefore, Plaintiff asserts that the ALJ engaged in "an overly stringent review of the record" at step two and subsequently failed to review Plaintiff's impairments stemming from her speech and language disorders in the RFC determination. [Doc. 16 at 14, 16].

However, the Commissioner asserts that the ALJ properly evaluated the severity of Plaintiff's impairments at step two, and found that Plaintiff's expressive language disorder constituted a severe impairment. [Doc. 21 at 9]. Further, the Commissioner maintains that the ALJ then considered her speech and language impairments in the RFC determination. [*Id.*].

In the disability decision, the ALJ found that Plaintiff had several severe impairments, including expressive language disorder. [Tr. 18]. Additionally, the ALJ specifically noted that Plaintiff had a nonsevere impairment of hearing loss, but that it had "no more than a slight and *de minimis* effect" on Plaintiff's ability to perform basic work activities. [*Id.*].

It is well settled that the ALJ's failure to identify some impairments as "severe" is harmless where the ALJ continues the disability determination and considers both severe and nonsevere impairments at subsequent steps of the sequential evaluation as required by the regulations. *See*

*Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) ("And when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two '[does] not constitute reversible error.'") (quoting *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)); *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) ("Because the ALJ found that Pompa had a severe impairment at step two of the analysis, the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence.").

As an initial matter, Plaintiff has failed to demonstrate that the ALJ's finding of her expressive language disorder as a severe impairment did not encompass the alleged receptive language, phonological, and reading disorders. Courts in this district have recognized generic or broad terminology to encompass more specific diagnoses. *See e.g., Waters v. Comm'r of Soc. Sec.*, No. CIV.A. 10-14927, 2012 WL 511998, at *6 (E.D. Mich. Jan. 5, 2012) ("[W]hile the ALJ did not include the term 'lumbar back condition' in her Step Two findings, she found the 'history of gunshot wound,' thereby acknowledging Plaintiff's claim that alleged bullet fragments (allegedly causing back pain) created a work-related limitation."), *report and recommendation adopted by*, 2012 WL 512021, at *1 (E.D. Mich. Feb. 16, 2012); *Williams v. Comm'r of Soc. Sec.*, No. CIV.A. 10-14149, 2011 WL 6217418, at *7 (E.D. Mich. Nov. 4, 2011) ("Finally, the ALJ's recognition of a 'discogenic degenerative disorder of the back' as a severe impairment at step two seems to encompass Plaintiff's cervical facet syndrome."), *report and recommendation adopted by*, 2011 WL 6217074 (E.D. Mich. Dec. 14, 2011).

Further, any error by the ALJ to find these impairments as severe would be harmless because the ALJ considered Plaintiff's functional limitations related to her speech, language, and reading difficulties in the RFC determination. *See Fisk*, 253 F. App'x at 583. First, the ALJ

8

reviewed Plaintiff's testimony that she had difficulty communicating when many people are in the room. [Tr. 20]. Additionally, the ALJ discussed the evaluation completed by Ms. Rapowitz, which "opined that [Plaintiff] exhibited moderate to severe receptive and expressive language disorder, that she exhibited difficulty with phonological awareness, [ ] that she had difficulty with phonological awareness, and that she had difficulty with word finding skills." [Tr. 21]. The ALJ detailed the recommendations provided by Ms. Rapowitz, but ultimately afforded the opinion partial weight, as alternatives were provided to combat the assessed limitations and based upon Plaintiff's daily activities, "the accommodations/alternative suggest[ions] should yield positive results as opined." [*Id.*].

Accordingly, the Court finds that the ALJ did not commit reversible error at step two and properly considered all of the Plaintiff's impairments, both severe and non-severe, at subsequent steps of the disability determination. *See, e.g.*, *Germany on Behalf of K.G. v. Comm'r of Soc. Sec.*, No. 5:18-CV-283, 2018 WL 6268296, at *7 (N.D. Ohio Nov. 6, 2018) ("Even assuming that the ALJ erred in determining that K.G.'s speech and language developmental delay was not a severe impairment, any such error was harmless because the ALJ determined that K.G. had other severe impairments and proceeded to consider all of K.G.'s impairments, including his speech and language deficits, at Step Three of the sequential analysis."), *report and recommendation adopted sub nom.*, *Germany o/b/o K.G. v. Berryhill*, 2018 WL 6267145 (N.D. Ohio Nov. 30, 2018).

Plaintiff similarly claims that although the ALJ afforded partial weight to Ms. Rapowitz's opinion, she failed to incorporate the opined limitations into Plaintiff's RFC. [Doc. 16 at 17]. The applicable regulations include under the term "acceptable medical sources" licensed physicians, psychologists, optometrists and podiatrists, as well as qualified speech-language pathologists. 20 C.F.R. § 416.913(a). If the source of the opinion is not a physician, psychologist or other

acceptable medical source, she does not enjoy the controlling weight of a treating source. *See Porter v. Comm'r of Soc. Sec.*, 634 F. App'x 585, 586 (6th Cir. 2016) (per curiam) (holding medical opinion based on the evaluation of a social worker who did not qualify as a treating source was not entitled to controlling weight); *see also* Soc. Sec. Ruling 06-03P, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Here, the ALJ reviewed Ms. Rapowitz's opinion and stated that she found that a psychological evaluation was necessary. [Tr. 21]. As the Court previously detailed, after further testing, Ms. Rapowitz opined that Plaintiff exhibited moderate to severe receptive and expressive languages disorders. [Tr. 559]. Ms. Rapowitz recommended further testing by a psychologist who specializes in learning disorders, and stated that if Plaintiff was given one to two step short directions, repeated directions by paraphrasing what was asked of her, and writes down directions, then she should be able to complete tasks. [Tr. 560].

However, the ALJ assigned partial weight to the opinion, claiming that "[t]he limitations noted are not tantamount to supporting a finding of disabled as alternatives are given to combat the limitations and based upon [Plaintiff's] documented abilities to handle financial accounts, use the computer, cook, drive, and follow written and spoken instructions, the accommodations/alternative[s] suggested should yield positive results as opined." [Tr. 21]. Here, the Court agrees with the Commissioner that although the ALJ's analysis in the disability decision was not a "model of clarity" [Doc. 21 at 13], the ALJ appropriately explained her reasons for not adopting any assessed limitations. The ALJ considered the opinion, and noted inconsistencies between Plaintiff's reported daily activities. Ms. Rapowitz's opinion included functional limitations on Plaintiff's ability to perform work-related activities, as well as recommendations for Plaintiff in handling her functional limitations, such as repeating provided directions. In the RFC

determination, after reviewing Plaintiff's mental limitations, the ALJ limited Plaintiff to performing routine tasks involving no more than simple short instructions and simple work-related decisions. [Tr. 20]. Accordingly, the Court finds that the ALJ appropriately assigned partial weight to Ms. Rapowitz's opinion, and that any failure to adopt opined functional limitations is supported by the ALJ's review of Plaintiff's daily activities.

### B. Opinion of Consultative Examiner, Stephen Hamby, Ph.D.

Plaintiff asserts that the ALJ's RFC determination does not accurately reflect the opined limitations in Dr. Hamby's opinion, as despite affording great weight to the opinion, "the ALJ disregarded, without explanation, [the] portion of the opinion that identified Plaintiff's limitation[s] related to work-place stress." [Doc. 16 at 19].

Opinions from non-treating, examining and non-examining medical and psychological consultants are evaluated using the regulatory balancing factors set forth in 20 C.F.R. § 404.1527(c)(1)–(6). Specifically, "[t]he Commissioner [] weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)). "Other factors 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion." *Id.* (quoting 20 C.F.R. § 404.1527(c)(6)).

Dr. Hamby, a licensed psychologist, consultatively examined Plaintiff on April 6, 2016. [Tr. 487]. Dr. Hamby reviewed Plaintiff's personal history and current functioning, as well as performed a mental status examination. [Tr. 487–89]. Ultimately, Dr. Hamby diagnosed social anxiety disorder, expressive language disorder, and depressive disorder, NOS. [Tr. 491]. Dr. Hamby noted that Plaintiff's "language problem tends to cause her to be uncomfortable around

people because of her lack of understanding what others are saying as well as her own deficiencies in expressing herself." [*Id.*]. Additionally, Dr. Hamby reviewed Plaintiff's history of depression and mental health treatment. [*Id.*].

Accordingly, Dr. Hamby opined that Plaintiff would be able to understand, remember, and carry out simple instructions, and that she would be able to sustain her concentration to complete simple tasks. [Tr. 492]. However, Dr. Hamby noted that Plaintiff would have mild difficulty relating to supervisors and coworkers as a result of her depression, particularly due to her social anxiety and reported lack of social interest. [*Id.*]. Further, Dr. Hamby found that Plaintiff "would be at mild risk for psychiatric decompensation under stressful work conditions." [*Id.*]. Lastly, Dr. Hamby stated that Plaintiff's "mental condition would be expected to possibly improve if she resumed receiving mental health treatment, including receiving a psychiatric evaluation for appropriate psychotropic medication." [*Id.*].

In the disability decision, the ALJ reviewed Dr. Hamby's opinion, and afforded it great weight. [Tr. 21]. The ALJ stated that Dr. Hamby's opinion was supported by Dr. Hamby's own medical findings, specifically noting Plaintiff's good eye contact, neutral mood, normal effect, lack of evidence of distress or agitation, good attention span and concentration, no distractibility, normal speech and thought processes, normal consciousness with no obvious clouding or confusion, adequate memory, and no perpetual abnormalities. [*Id.*]. Additionally, the ALJ found that "[t]hese findings are consistent with other medical of record, as well as [Plaintiff's] daily documented activities of daily living[,] such as independence in personal care and hygiene and the ability to cook, drive, use a computer, care for pets, shop, perform household chores and handle financial accounts." [*Id.*]. Plaintiff challenges the ALJ's failure to account for her impairments related to stress and the lack of explanation for "why this portion of Dr. Hamby's opinion was not

incorporated" in the RFC determination.  [Doc. 16 at 18].

Ultimately, when an ALJ fails to incorporate all of the limitations opined from a medical source who received great weight, "it does not follow that the ALJ's explanation is, therefore, procedurally inadequate, or that the RFC was not supported by substantial evidence." *Moore v. Comm'r of Soc. Sec.*, No. 1:13-CV-00395, 2013 WL 6283681, at *7 (N.D. Ohio Dec. 4, 2013); *see Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale.") (citing *Harris v. Comm'r of Soc. Sec. Admin.*, No. 1:13–cv–00260, 2014 WL 346287, at *11 (N.D. Ohio Jan. 30, 2014)).

Plaintiff cites to *Hendricks v. Commissioner of Social Security Administration*, a case from the Northern District of Ohio where the court found that the ALJ's RFC determination was supported by substantial evidence after the ALJ "included RFC limitations to account for problems with" stress, such as restricting the plaintiff "to no fast-paced work and no work involving strict production quotas.  No. 1:16-CV-00168, 2016 WL 8078323, at *10 (N.D. Ohio Dec. 28, 2016), *report and recommendation adopted by*, 2017 WL 374730 (N.D. Ohio Jan. 25, 2017). Plaintiff claims that "[t]his case is distinguishable from the court's conclusion in *Hendricks* because, after affording Dr. Hamby's opinion great weight, the ALJ failed to provide for any limitation related to Plaintiff's stress."  [Doc. 16 at 19].

However, similar to *Hendricks*, the ALJ in the present case discussed the portion of Dr. Hamby's opinion related to Plaintiff's stress, as the ALJ noted that Dr. Hamby opined that Plaintiff "would be at mild risk for psychiatric decompensation under stressful work conditions."  [Tr. 21]. Additionally, Plaintiff fails to demonstrate how the ALJ did not incorporate this assessed

impairment in the RFC determination through the limitation to performing routine tasks involving no more than simple short instructions and simple work-related decisions, with few work place changes, and only occasional interaction with coworkers and the public. *See Hendricks*, 2016 WL 8078323, at *12 ("To the extent that Hendricks claims that the ALJ did not consider or account for stress caused by being around other people, whether on a bus or in other public spaces, the ALJ considered those allegations and included RFC restrictions that limit Hendricks's social interactions, including restrictions of no more than occasional contact with coworkers and supervisors and no direct work-related contact with the public."). Moreover, the challenged portion of Dr. Hamby's opinion allegedly not considered in the RFC determination does not include a specific functional limitation. *Cf. Woodruff v. Astrue*, No. 1:12-CV-1752, 2013 WL 821336, at *10 (N.D. Ohio Mar. 5, 2013) ("Here, despite granting Dr. Renneker's opinion great weight, the ALJ did not include limits on Plaintiff's ability to sustain neck flexion in his calculation of her RFC. Because these limitations conflict with the RFC—as the RFC contains no limits on these activities—SSR 96–8p requires the ALJ to explain their omission. A review of the ALJ's decision reveals that he did not explain his reasons for rejecting these limitations.").

The Court also finds that the mental RFC determination with respect to the stress limitation in Dr. Hamby's opinion is supported by substantial evidence. *See, e.g.*, *Maxwell v. Comm'r of Soc. Sec.*, No. 2:17-cv-835, 2018 WL 2173591, at *10 (S.D. Ohio May 11, 2018) ("Here, while the ALJ may not have adopted every possible limitation opined by the state agency consultants and Dr. Sours, the ALJ's mental RFC determination was supported by substantial evidence and is not inconsistent with the medical opinions in the record."), *report and recommendation adopted by*, 2018 WL 2463386 (S.D. Ohio June 1, 2018). The ALJ reviewed Dr. Hamby's opinion that Plaintiff would be at mild risk for psychiatric decompensation under stressful work conditions, but

noted Dr. Hamby's examination findings, including Plaintiff's neutral mood, normal effect, and that Plaintiff displayed no evidence of distress or agitation. [Tr. 21]. The ALJ also discussed Plaintiff's activities of daily living, including the ability to use a computer, shop, and handle financial accounts. [*Id.*].

Ultimately, the Court finds that the ALJ appropriately considered the assessed stress limitation in Dr. Hamby's opinion. The ALJ "is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding . . . [and] an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (internal citations omitted); *see also McCoy v. Comm'r of Soc. Sec.*, No. 3:15-cv-2308, 2016 WL 6565559, at *13 (N.D. Ohio Nov. 4, 2016) ("While the ALJ did not adopt each and every limitation from the opinions of Drs. Bergsten and Castro, the ALJ did not ignore their opinions nor did the ALJ fail to explain the weight provided to their opinions."). Although Plaintiff would interpret the medical evidence differently, the Court finds that the ALJ's determination was within his "zone of choice." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009); *see also Huizar v. Astrue*, No. 3:07CV411-J, 2008 WL 4499995, at *3 (W.D. Ky. Sept. 29, 2008) ("While plaintiff understandably argues for a different interpretation of the evidence from that chosen by the ALJ, the issue is not whether substantial evidence could support a contrary finding, but simply whether substantial evidence supports the ALJ's findings."). Therefore, Plaintiff's assignment of error does not constitute a basis for remand.

### C.     Opinion of Kristina Fredericksen, M.S., L.A.P.C., C.R.C., and Kimberly Bigelman, M.S., C.R.C.

Plaintiff alleges that the ALJ mischaracterized the substance of the opinions of Ms.

Fredericksen and Ms. Bigelman, as although the ALJ afforded great weight to the opinion, she subsequently "mischaracterized the extent of Plaintiff's limitations as identified by the evaluators which rendered her RFC determination unsupported by substantial evidence." [Doc. 16 at 21].

Ms. Fredericksen and Ms. Bigelman completed a comprehensive vocational evaluation to "provide an evaluation of [Plaintiff's] vocational capacity related to employment potential and training." [Tr. 535]. The certified rehabilitation counselors performed a clinical interview; observed Plaintiff's behavior; and conducted a Beck Depression Inventory-II and Beck Anxiety Inventory Assessments, as well as the WRAT-4, Nelson-Denny Reading Test, Strong Interest Inventory, Leisure Activity Inventory, Myers-Briggs Type Indicator, Career Ability Placement Survey, Learning Style Inventory, Vocational Assets and Potential Obstacles to Employment, and Functional Assessment Inventory. [*Id.*].

Ultimately, Ms. Fredericksen and Ms. Bigelman opined that "[w]ith the right accommodations, [Plaintiff] should be able to find and maintain gainful employment." [Tr. 547]. First, the evaluators noted that Plaintiff would like to be a data entry operator, and that she exceeds the math requirement for the job, but according to the performed Nelson-Denny reading test, she did not meet the required reading level. [Tr. 546]. However, the report noted that Plaintiff acknowledged that she did not try to read the tests, and due to the fact that she has a bachelor's degree and has taken graduate level classes, she would likely meet the reading requirement. [*Id.*]. Next, Ms. Fredericksen and Ms. Bigelman stated that Plaintiff could consider becoming a medical records clerk, with similar analysis that while Plaintiff did not meet the reading requirements of the position, her education level established that she should be able to meet the requirements of the job. [*Id.*]. Further, the evaluators "strongly recommended that [Plaintiff] obtain counseling with a licensed therapist, psychologist, and/or psychiatrist" due to her disclosures during the

clinical interview and the results of the Beck Anxiety and Depression Inventory. [*Id.*].

Lastly, Ms. Fredericksen and Ms. Bigelman noted that due to Plaintiff's physical and emotional limitations, supported employment should be considered. [*Id.*]. The report defined that "[s]upported employment is a combination of employment, on-the-job training, and post-employment support used to place and maintain individuals with disabilities in competitive employment," and that Plaintiff would benefit from having a specialist that could "help advocate for her, provide on-the-job training, and could carve out or modify a job that she is interested in." [*Id.*]. Additionally, the evaluators noted that Plaintiff may consider work-from-home jobs due to the increased flexibility regarding a potential schedule and physical accommodations. [Tr. 547].

In the disability decision, the ALJ reviewed that the Comprehensive Vocational Evaluation "indicated that [Plaintiff] was 'a bright woman who has a lot of potential' and with 'the right accommodations she should be able to find and maintain gainful employment.'" [Tr. 23]. The ALJ then assigned great weight to this opinion, noting that "[t]he opining party, from a vocational standpoint, did not find any factors that would totally prevent [Plaintiff] from working." [*Id.*]. Additionally, the ALJ noted that "accommodations are reasonable, such as work-from-home jobs, which was suggested." [*Id.*].

Plaintiff, however, claims that the ALJ mischaracterized Ms. Fredericksen and Ms. Bigelman's opinion, as "the evaluators did not identify work-from-home jobs as the accommodation required by [ ] Plaintiff," but "[r]ather, they opined that she required 'flexibility in terms of schedule and physical accommodations.'" [Doc. 16 at 21]. Further, Plaintiff claims that the ALJ failed to provide for flexibility in terms of her schedule, the need for a specialist, or supported employment. [*Id.*]. Additionally, Plaintiff asserts that the evaluators "identified accommodations that are special and unusual such that they preclude substantial gainful activity"

17

under Social Security Ruling 05-02.  *Id.* at 22].

The Commissioner asserts that the Ms. Fredericksen and Ms. Bigelman suggested possible accommodations in their evaluation, and that as vocational counselors, they were not medical sources.  [Doc. 21 at 14–15].  The Commissioner then maintains that the evaluators determined that several jobs existed that Plaintiff would be able to perform, which is in line with the ALJ's decision.  [*Id.*].

As vocational counselors, Ms. Fredericken and Ms. Bigelman are not considered acceptable medical sources, and thus, the evaluation did not constitute a medical opinion.  20 C.F.R. § 416.913(a)(4).  Evidence from those who are "not acceptable medical sources" or "other sources," including vocational counselors, "are important and should be evaluated with key issues such as impairment severity and functional effects, along with other relevant evidence in the file."  Soc. Sec. Rul. 06–03, 2006 WL 2329939, at *2 (Aug. 9, 2006); *see, e.g.*, *Hawkins v. Comm'r of Soc. Sec.*, No. 1:12CV1210, 2013 WL 1947216, at *16 (N.D. Ohio Mar. 19, 2013), *report and recommendation adopted by*, 2013 WL 1947185 (N.D. Ohio May 10, 2013).  In considering statements from "other sources," under Social Security Ruling 06-3p, "the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."  2006 WL 2329939, at * 1.

In the disability decision, the ALJ reviewed the vocational evaluation and appropriately stated the weight assigned to the opinion, including the conclusion that "with 'the right accommodations [Plaintiff] should be able to find and maintain gainful employment.'"  [Tr. 23].  Further, the Court finds that the ALJ did not mischaracterize the substance of the vocational

18

evaluation. Ms. Fredericksen and Ms. Bigelman did not specifically assess limitations relating to Plaintiff's schedule and physical accommodations, or state that a work-from-home job was required, but noted that such jobs would allow her more flexibility for potential accommodations. [Tr. 547]. Further, the evaluators merely stated that the use of a specialist would benefit Plaintiff, and supported employment should be considered. [Tr. 546]. While Plaintiff seemingly claims that Ms. Fredericksen and Ms. Bigelman identified accommodations that would preclude substantial gainful activity, Social Security Ruling 05-02 applies to the evaluation of an unsuccessful work attempt at step one of the sequential evaluation. 2005 WL 6491604, at *2 (Feb. 28, 2005).

While the ALJ did not review the entire evaluation, it is well established that "[a]n ALJ need not discuss every piece of evidence in the record for his decision to stand." *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004). Plaintiff also claims that the ALJ "failed to reconcile the differences between the evaluators' opinion and her RFC determination for light work," such as Plaintiff's need for flexibility in terms of her schedule and disability. [Doc. 16 at 23]. The Court finds that the ALJ's extensive review of the medical record in the disability decision establishes that she considered the discussion of Plaintiff's functional limitations and suggested accommodations in the vocational accommodation, and considered the opinion in the RFC determination.

As the Court has already stated, the ALJ is tasked with reviewing the medical and non-medical evidence to determine the claimant's RFC. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). The ALJ noted that Ms. Fredericksen and Ms. Bigelman found that there were not any factors that would totally prevent Plaintiff from working, and the vocational expert at the disability hearing identified other work that Plaintiff could perform. [Tr. 23–24]. Therefore,

the ALJ considered the potential accommodations in the evaluation, but after reviewing the total medical record, crafted limitations in the RFC determination that appropriately reflected Plaintiff's mental and physical limitations. Accordingly, the Court finds that the ALJ properly considered Ms. Fredericksen and Ms. Bigelman's opinion, and Plaintiff's assignment of error does not constitute a basis for remand.

> **D.** **Opinion of Non-Examining State Agency Consultant, Barbara Green-Muldrow, M.D.**

Plaintiff asserts that Dr. Green-Muldrow's opinion "was based on an inaccurate read[ing] of the evidence," and that the ALJ "failed to incorporate impairments that were identified in the opinion," despite her assignment of great weight to the opinion. [Doc. 16 at 23]. The Commissioner maintains that although the opinion contained a misstatement about Plaintiff's ability to climb onto the examination table without difficulty at a consultative examination, the remainder of the opinion accurately summarized the medical record. [Doc. 21 at 17]. Further, the Commissioner alleges that the ALJ appropriately reviewed Plaintiff's use of a cane in the RFC determination—the challenged limitation which Plaintiff claims that the ALJ failed to include. [*Id.* at 18].

Dr. Green-Muldrow reviewed the evidence of record at the reconsideration level of the agency's review on August 24, 2016. [Tr. 169]. Dr. Green-Muldrow opined that Plaintiff could occasionally lift and/or carry up to twenty pounds, and that she could frequently lift and/or carry up to ten pounds. [Tr. 167]. Additionally, she opined that Plaintiff could stand and/or walk, with normal breaks, for a total of four hours, and sit for a total of about six hours in an eight-hour workday. [*Id.*]. Dr. Green-Muldrow stated that Plaintiff's exertional limitations were based upon her moderate to severe limp with the use of a cane that appeared to be required for distances, but

also noted that she was "able to climb up on the exam table without difficulty." [*Id.*]. When assessing Plaintiff's postural limitations, Dr. Green-Muldrow opined that Plaintiff could occasionally climb ramps or stairs, as well as stoop, kneel, crouch, and crawl; but that she could never climb ladders, ropes, or scaffolds, due to her degenerative disc disease with allegations of pain and antalgic gait. [*Id.*].

The ALJ assigned great weight to the opinions of the nonexamining state agency physicians. [Tr. 22]. The ALJ noted that that the physicians did not treat or examine Plaintiff, but found that their opinions were "substantially supported by the medical evidence of record and are consistent with the RFC for this decision." [*Id.*].

Plaintiff first challenges Dr. Green-Muldrow's notation that Plaintiff was "able to climb up on the exam table without difficulty." [Tr. 167]. Plaintiff points to the April 14, 2016 opinion of consultative examiner Charles F. Scott, M.D. that Plaintiff had difficulty getting onto the examination table [Tr. 523], a January 16, 2017 treatment note from Stephen B. James, D.O., that she had "difficulty in standing from a seated position due to discoordination of the legs" [Tr. 1014], and the August 31, 2017 opinion from treating physician R. Scott Mills, M.D. that she was "unable to stand from a chair without considerable effort and use of her arms and a moderate degree of pain" [Tr. 1016].

Although Dr. Green-Muldrow mischaracterized the medical record when she stated that Plaintiff was able to climb up onto an exam table without difficulty, the Court finds that this constitutes harmless error, and substantial evidence supports the weight assigned to the opinions of the nonexamining state agency physicians. *See, e.g.*, *Hockey v. Comm'r of Soc. Sec.*, No. 1:17-CV-796, 2018 WL 4374977, at *4 (W.D. Mich. May 23, 2018) ("While Plaintiff is correct that the ALJ arguably misinterpreted Dr. Russo's findings, any such error is harmless and does not

undermine the ALJ's opinion . . . [A] review of Dr. Russo's findings on examination and other conclusions reveals that the doctor's findings and opinions are not inconsistent with the ALJ's opinion."), *report and recommendation adopted by*, 2018 WL 3737945 (W.D. Mich. Aug. 7, 2018).

First, the ALJ did not base her assignment of great weight to Dr. Green-Muldrow's opinion on the misstatement of Plaintiff's ability to climb onto an exam table without difficulty. Additionally, the ALJ assigned great weight to Dr. Scott's opinion after finding that it was supported by his objective medical findings, including specifically noting that Dr. Scott stated that Plaintiff was able to climb onto the examination table with difficulty, but that there was no evidence of muscle fasciculations, muscle atrophy, or limb asymmetry. [Tr. 22]. The Commissioner correctly states that Plaintiff does not object to the ALJ's assignment of great weight to Dr. Scott's opinion, which stated that Plaintiff "would appear to have problems with prolonged standing, prolonged walking, bending and crouching but not with lifting at this time." [Tr. 525]. Ultimately, the ALJ reviewed the medical record with respect to Plaintiff's back pain and degenerative disc disease to assess her reduced range of motion and ability to stand, and thus, Dr. Green-Muldrow's mischaracterization of the medical record with respect to Plaintiff's ability to climb onto the table without difficulty does not constitute a basis for remand.

Plaintiff also claims that although Dr. Green-Muldrow's opinion noted Plaintiff's need for a cane, "nowhere in the ALJ's decision does she discuss Plaintiff's need for a cane." [Doc. 16 at 24]. However, the ALJ noted that Dr. Scott found that Plaintiff had a remarkable gait that appeared to require a cane for distances, but that she was still able to stand. [Tr. 22]. Additionally, the ALJ detailed that Plaintiff demonstrated "a somewhat slow gait using a cane to walk" during her consultative examination with Dr. Hamby. [*Id.*]. Further, the Commissioner correctly states that

the ALJ asked the VE to consider a hypothetical individual with Plaintiff's RFC who also required the frequent use of a cane during the workday. [Tr. 79–80]. Under this proposed limitation, the VE found that such an individual could still perform work as an office clerk, with 93,000 total jobs in the national economy. [*Id.*]; *see, e.g.*, *Holland v. Comm'r of Soc. Sec.*, No. 4:13-CV-10295, 2014 WL 1118521, at *9 (E.D. Mich. Mar. 20, 2014) (finding regardless if the ALJ improperly rejected the consultative examiner's opinion regarding the use of a cane, the VE's answer at the disability hearing that, even if the claimant was required to use a cane, that approximately 6,000 statewide jobs existed resulted in any error being harmless).

Lastly, the ALJ reviewed Plaintiff's testimony that she uses a nonprescribed cane. [Tr. 20]. The Sixth Circuit has explained that unless a cane or other assistive device is found to be a necessary device, it will not be considered an exertional limitation that reduces a claimant's ability to work. *Carreon v. Massanari*, 51 F. App'x 571, 575 (6th Cir. 2002). "SSR 96–9p requires medical documentation of the need for the assistive device, not just a suggestion by a doctor relating to a claimant's continued use of an assistive device that the claimant purchased on his or her own." *Perry v. Berryhill*, No. 1:16-CV-2970, 2018 WL 1393275, at *4 (N.D. Ohio Mar. 20, 2018). Therefore, the Court finds that the ALJ appropriately considered the impact that the use of Plaintiff's unprescribed cane would have on her ability to work.

Ultimately, Plaintiff asserts that the ALJ "relied almost exclusively upon the opinion of a non-examining consultant who did not have the benefit of accurate evidence." [Doc. 16 at 25]. However, the Court finds that the ALJ appropriately considered Dr. Green-Muldrow's opinion, and any error with respect to Plaintiff's use of a cane or Dr. Green-Muldrow's mischaracterization of the medical record would be harmless error.

## VI.   CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 15**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 20**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**.  The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

_____
United States Magistrate Judge